[No. 14064.    Department One. — September 5, 1891.]

ALONZO J. PAINTER ET AL., RESPONDENTS, v. THE PASADENA LAND AND WATER COMPANY ET AL., APPELLANTS.

DEED — RESERVATIONS — EXCEPTIONS — PROFITS A PRENDRE — TRANSFER OF RIGHTS RESERVED. — A right reserved may be an exception, though designated in the deed as a reservation; and when rights reserved are either exceptions or *profits a prendre*, neither words of inheritance nor an express power of assignment is required to be stated in the deed, in order to enable the grantor to make a transfer of such rights.

ID. — RESERVATION EQUIVALENT TO GRANT. — A reservation of a right of *profit a prendre* in a deed is equivalent to an express grant of the right by the grantee to the grantor.

ID. — ASSIGNABILITY OF PROFIT A PRENDRE —WORDS OF INHERITANCE — CHANGE OF COMMON-LAW RULE BY CODE. — Under the Civil Code of this state, which has changed the common-law rule, words of inheritance are not required to transfer a fee or any interest in real property; and as a reservation of a right of *profit a prendre* was assignable at common law with words of inheritance, under the provisions of the code it may be assigned without such words.

ID. — RESERVATION OF WATER RIGHTS — DEVELOPMENT AND EXPLORATION OF MARSH-LAND — PROFIT A PRENDRE. — The right reserved in a deed to develop and explore a tract of marsh-land, and to take away the water therefrom for use or profit, may be transferred.

ID. — EXCEPTION — REPUGNANCY TO ESTATE GRANTED — UNCERTAINTY OF BOUNDARIES — EVIDENCE. — Although an exception of any part of a grant of a specific number of acres, or an exception directly contradicting

the terms of a grant, is void as repugnant to the estate granted, yet where the land is described by courses and distances, and the exception or reservation is of all marsh or water-bearing lands in the tract, it is not void as repugnant to the estate granted, nor is it void for uncertainty because the boundaries of the part excepted must be shown by evidence.

ID. — CONSTRUCTION OF DEED — INTENTION OF PARTIES — DEFINITION OF TERMS. — Where the intention of the parties is clearly expressed in a deed containing an exception or reservation of marsh or water-bearing land, and of the right to develop the same, little weight should be attached to technical definitions of the terms used, and it matters little what name is given to the rights reserved.

ID. — ASSIGNMENT — RIGHTS OF GRANTEE. — A grantor of lands who has reserved a ditch and water right, and also the right to enter upon and tunnel the water-bearing land in the tract granted, and to develop the waters thereon, granting only to the grantee such water as is necessary for irrigation and domestic purposes, may assign all of such rights, and the grantee thereof is entitled to go upon the land for the purpose of making repairs, and to tunnel or in any other reasonable manner to develop the water in the water-bearing lands of the tract, not required by the first grantee for irrigation and domestic purposes.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Anderson, Fitzgerald & Anderson,* for Appellants.

The water in the swampy, marshy piece of ground on the tract of land was percolating and filtrating the soil, and " belonged to the soil, is part of it, is owned and possessed as the earth is, and may be used, reserved, and controlled to the same extent by the owner." (*Trustees of Delhi* v. *Youmans,* 50 Barb. 318, 319; *Hanson* v. *McCue,* 42 Cal. 309; 10 Am. Rep. 299; *Cross* v. *Kitts,* 69 Cal. 222; 58 Am. Rep. 558; Gould on Waters, sec. 280; *Johnson* v. *Rayner,* 6 Gray, 107.) The reservation of these " waters " in the deed was in the nature of an exception, and, as such, retained the title thereto in the grantor, just as it existed before; that is, an absolute fee-simple title that would pass to his heirs or assigns, though the reserving clause did not contain words of inheritance or succession. (4 Kent's Com. 468; Gould on Waters, sec. 310; *Whitaker* v. *Brown,* 46 Pa. St. 197; *Emerson* v. *Mooney,* 50 N. H. 315.) If it be conceded that

the clause in question is not strictly an exception, and is
a reservation, still, the reservation is of a right of *profit
a prendre*, and though a grant in gross, it is an estate,
and is assignable and inheritable at common law, where
words of inheritance are used in the reserving clause.
(Washburn on Easements and Servitudes, 4th ed., 13–17;
2 Wait's Actions and Defenses, 660; 6 Am. & Eng.
Ency. of Law, 142.) A reservation of an easement
in the deed by which lands are conveyed is equivalent,
for the purpose of creation of the easement, to an ex-
press grant of the easement by the grantee to the grantor.
(*Wagner* v. *Hanna*, 38 Cal. 116; 99 Am. Dec. 354; Wash-
burn on Easements and Servitudes, 34; Stoddard on ·
Easements, Bennett's ed., 108, 109.) The reservation
being a grant from the grantee to the grantor, words of
inheritance are not necessary to pass a fee or absolute
title. (Civ. Code, secs. 1044, 1072, 1105.) Water per-
colating, contained in, and intermixed with the soil is a
part of the owner's estate in the soil, and is eminently
the subject of an exception, in the strict technical legal
meaning of that word. (*Hanson* v. *McCue*, 42 Cal. 309;
10 Am. Rep. 299; *Trustees etc. of Delhi* v. *Youmans*, 50
Barb. 318; Gould on Waters, sec. 280; *Johnson* v. *Rayner*,
6 Gray, 107; *Cross* v. *Kitts*, 69 Cal. 222; 58 Am. Rep.
558.) Being an integral part of the estate, when ex-
cepted by apt words from the granting part of the
deed, it remains in the grantor with all of its original
attributes of an absolute property. (Gould on Waters,
sec. 310; *Whitaker* v. *Brown*, 46 Pa. St. 197; *Emerson* v.
*Mooney*, 50 N. H. 319; 4 Kent's Com. 468.) The right
to take or use water from the land of another is a right
of *profit a prendre*. (*Goodrich* v. *Burbank*, 12 Allen, 459;
90 Am. Dec. 161; *Hill* v. *Lord*, 48 Me. 100; *Chatfield* v.
*Wilson*, 28 Vt. 49; *Poull* v. *Mockley*, 33 Wis. 482; *Hall* v.
*Ionia*, 38 Mich. 498.) The right to the use of water be-
ing an estate lying in grant, words of inheritance are not
necessary in the grant to pass an absolute title or fee
therein, under the codes of California. (Civ. Code, secs.
1044, 1072, 1092, 1105.)

*Lee, Gardiner & Scott,* for Respondents.

Any restrictions placed on the grantee respecting the use of waters, or rights in or to water, must be clear and unambiguous, and not repugnant to the grant. (Gould on Waters, secs. 311, 312; Civ. Code, secs. 1067, 1070; *Provost* v. *Calder,* 2 Wend. 517.) Whatever rights were reserved in the deed to Elliott and Richardson were mere servitudes in gross, or personal rights, and incapable of assignment. (Civ. Code, secs. 801, 802; *Ackroyd* v. *Smith,* 10 Com. B. 164; Washburn on Easements, 4, 8, 28, 29; *Wagner* v. *Hanna,* 38 Cal. 111; 99 Am. Dec. 354; *Farmer* v. *Ukiah W. Co.* 56 Cal. 11; *Wickham* v. *Hawker,* 7 Mees. & W. 62; *Pearson* v. *Hartman,* 100 Pa. St. 84; *Wadsworth* v. *Smith,* 11 Me. 278; 26 Am. Dec. 525; *Ascroft* v. *Eastern R. R. Co.,* 126 Mass. 196; 30 Am. Rep. 672; *Garrison* v. *Rudd,* 19 Ill. 558; *Smith* v. *Cooley,* 65 Cal. 46; *Dark* v. *Johnson,* 55 Pa. St. 164; 93 Am. Dec. 732.) No words of succession were used in the reservations, and therefore the claimed rights were not reserved in fee. (*Keeler* v. *Wood,* 30 Vt. 242; *Jamaica P. A. Co.* v. *Chandler,* 91 Mass. 159; Devlin on Deeds, sec. 970; *Page* v. *Palmer,* 48 N. H. 385; *Emerson* v. *Simpson,* 43 N. H. 475; 82 Am. Dec. 168.) The rights reserved were not made appurtenant to any other land of the grantor, and therefore they cannot be deemed to be easements, but are mere rights in gross. (*Wagner* v. *Hanna,* 38 Cal. 111; 99 Am. Dec. 354; Civ. Code, sec. 801.) The reserved rights were indivisible, and the attempted conveyance thereof, in different proportions, extinguished them. (*Van Rensselaer* v. *Radcliff,* 10 Wend. 639; 25 Am. Dec. 582; *Liman* v. *Abeel,* 16 Johns. 30; *Caldwell* v. *Fulton,* 31 Pa. St. 475; 72 Am. Dec. 760.) The grant of the water did not pass the soil, but only a piscary. (Co. Lit. b.; Com. Dig., tit. Grant, E, 5; 2 Bla. Com. 19; Goddard on Easements, 64; *Goodrich* v. *Burbank,* 12 Allen, 459; 90 Am. Dec. 161; Gould on Waters, sec. 291; *Los Angeles* v. *Baldwin,* 53 Cal. 469.) No exclusive property is or can be acquired in the water, while still remaining or flowing in

its natural condition, distinct and separate from the land over which it runs. (Pomeroy on Riparian Rights, 1 West Coast Rep. 785; Gould on Waters, sec. 304 a; *Jackson* v. *Halstead,* 5 Cow. 216; *Russell* v. *Scott,* 9 Cow. 279; *Provost* v. *Calder,* 2 Wend. 517; Washburn on Easements, 4th ed., 314; Civ. Code, secs. 801, 802.) The deed does not suggest that it was intended to attach the reserved rights to any lands, nor does it anywhere appear that this was the intention; and as the instrument must expressly declare this intention, it cannot be successfully claimed that the rights were easements reserved in favor of the ditch of the association. (*Wagner* v. *Hanna,* 38 Cal. 111; 99 Am. Dec. 354.)

PATERSON, J. — On April 23, 1887, the Lake Vineyard Land and Water Association conveyed the land described in the complaint to plaintiffs' grantors. The deed contained the following provisions: —

"Provided that the said A. Elliott and G. A. Richardson do not construct or allow to be constructed on the above-described land any work that will in any manner injuriously affect the waters or water rights of this association; and it is distinctly understood that the said association reserves the right at all times to enter upon said lands for the purpose of making any repairs or for the development of the waters of this association; and a strip ten feet wide on each side of the water-ditch of said association is hereby expressly reserved from the above sale, and under no consideration is the above description, or anything in this resolution contained, to be construed as conveying any part or portion of the aforesaid water-ditch or waters, or of the land for ten feet on each side thereof; and the aforesaid Elliott and Richardson shall not, and in purchasing this land they agree not to, use any water for other than domestic purposes and for irrigating said land, neither are they to sell, give away, or allow to be wasted any water whatsoever, and under no consideration are they to use any water from the ditch of said association; and the said association re-

serves the right to tunnel or in any other manner to
develop the waters of said association on this land;
and it is also clearly understood that the association
reserves the right of way through the above-described
lands for a wagon-road, — either the present road or one
as good."

Plaintiffs have acquired all the rights of Elliott and
Richardson, and the defendants have succeeded to all
the rights reserved to the land and water association
which could be transferred by it to a third party.

The statement on motion for a new trial shows "that
there was, on this tract of land, a marshy, swampy piece
of water-bearing land of from a three fourths acre to an
acre and one quarter dimension; that the water came to
the surface and became running water in this piece of
land ' only where it is trenched'; that when Richardson
and Elliott first bought and took possession of the land,
there was no water running 'to amount to anything,'
only ' seeping a little over the bank'; that an inch and
two thirds of water measured under a four-inch pressure
has been developed by Elliott and Richardson and plain-
tiffs on this piece of marshy or swamp land, and has
been, and was at the beginning of this suit, all used by
plaintiffs for domestic purposes and irrigation of the
tract of land conveyed by said deed to Elliott and Rich-
ardson.   An unimpeached witness on behalf of defend-
ants testified that, in his opinion, twenty inches of water
measured under a four-inch pressure, over and above the
water now being used, could be developed on said piece
of marshy or swampy land."

The defendants claim that the right to enter upon the
land, dig trenches, and develop the water resting in the
swampy portion referred to was reserved to the asso-
ciation in its deed to Elliott and Richardson, and that
they succeeded to the same right through the deed from
the association to them.   They were proceeding to en-
force such claim when this action was brought to restrain
them from so doing.

Plaintiffs contend that no such rights were reserved

to the association, and if they were, they were personal to the association, and could not be transferred to defendants or any other person. The court below sustained plaintiffs' contention, and gave judgment in their favor. Defendants have appealed from the judgment, and from the order denying their motion for a new trial.

Were the rights claimed by defendants reserved to the association?

It is evident that the parties had under consideration certain waters other than those in the ditch, and intended to define what their respective rights to the same should be under the deed. It was stipulated that "under no consideration" were the grantees "to use any water from the ditch of said association," but of the other waters they were to have sufficient for "domestic purposes and for irrigating said land." Where were the waters, other than those in the ditch, from which the grantees might draw sufficient for domestic uses and irrigation? Manifestly, they lay quiescent in the "marshy, swampy piece of water-bearing land" in which "the water came to the surface, and became running water only where it was trenched." There was about one acre of the land capable of producing over twenty inches of water. This is the water which the grantor retained the right to develop. There was no other water to develop. The association certainly did not desire to tunnel for, "or in any other manner to develop," water already running in its ditch. The grantor was a water association and the owner of a large body of water-bearing lands, including the land described in the deed. A large portion of the tract conveyed was dry, but susceptible of cultivation when irrigated. The association wanted the water to assist in feeding the ditch which ran through the tract granted, and the grantees wanted the land with water sufficient for domestic and irrigation purposes. The association conveyed the land, but reserved to itself the ditch and the water therein together with a strip of land ten feet wide on each side thereof, and all undevel-

oped water in the land conveyed, less the quantity re-
quired to irrigate the tract and for domestic purposes.
It is clear that such was the intention of the parties,
and it is expressed in language so plain that there is
little, if any, room for controversy.

Were the rights thus reserved capable of assignment?

It is claimed by respondents that rights like those re-
served in the deed to Elliott and Richardson, and now
under consideration, cannot be granted over unless the
power of assignment is expressly given to the grantor, or
the usual words of inheritance to pass the fee are used,
showing an intent to extend the right beyond the present
grantee; that the rights reserved were not made appur-
tenant to any land of the grantor, and were therefore
mere rights in gross, which are not assignable.

We do not deem it necessary to discuss the legal and
technical etymology of exceptions, reservations, or *profits
a prendre.*  A right reserved may be an exception, though
designated in the deed as a reservation.  The strip of
land ten feet wide on each side of the ditch reserved in
the deed is clearly an exception.  The other rights reserved
are either exceptions or *profits a prendre;* and if exceptions,
neither the word " heirs," nor express power of assign-
ment was required to enable the grantor to transfer his
rights to the appellants.  (*Whitaker* v. *Brown*, 46 Pa. St.
198; *Emerson* v. *Mooney*, 50 N. H. 319; Gould on Waters,
sec. 310.)  Regarded as a profit or interest in the soil, or,
as it was designated in the Norman French, a right of
*profit a prendre in alieno solo*, the same result follows.
When such a right is reserved in a deed by which lands
are conveyed, it is equivalent, so far as the creation of the
right of common is concerned, to an express grant of the
right by the grantee to the grantor (*Wagner* v. *Hanna*, 38
Cal. 116; 99 Am. Dec. 354); and in this state, words of
inheritance are not requisite to transfer a fee in real
property. (Civ. Code, secs. 1072, 1092, 1105.)  These pro-
visions of the code were intended to change the common-
law rule not only with respect to a transfer of the fee,
but of all other estates in real property.  In cases of ex-

XCI. CAL.—6

ception, where the grantor owns the fee, such words
would be entirely superfluous, because the thing excepted
never passed to the grantee, and as a reservation of a
right of *profit a prendre* was assignable at common law
with words of inheritance, we think, under the provis-
ions of the code quoted, it may now be assigned without
such words. The original and underlying principle of
the old rule requiring words of inheritance in the grant
conferring the fee — which was of feudal origin — was,
that the personal services of the grantee were the only
consideration of the grant, and the estate therefore
would not continue beyond the life of the grantee, unless
the grantor expressly provided that it should extend to
his heirs. The great changes which have occurred in
the political and business relations of life, however, have
done away with the reason for such a rule, and there is
certainly no reason why an absolute estate should pass
without words of inheritance, and the reservation of a
right of *profit a prendre* should not.

The cases cited by respondents which relate to water
running on the surface do not aid us in determining
the question before us in this case. There is a wide and
apparent distinction between the water of a running
stream and water which rests in the soil. The former
assumes a distinct character from that of the earth; no
exclusive property can be acquired in it while it is still
flowing in its natural condition, distinct and separate
from the land over which it runs; the latter is confined
in the earth, and "has no distinctive character of owner-
ship from the earth itself, any more than the metallic
oxides of which the earth is composed." (*Roath* v. *Dris-
coll*, 20 Conn. 540; *Cross* v. *Kitts*, 69 Cal. 222; 58 Am.
Rep. 558.) In *Hanson* v. *McCue*, 42 Cal. 309, 10 Am.
Rep. 299, the court said: "Water filtrating or percolat-
ing in the soil belongs to the owner of the freehold, like
the rocks and minerals found there. . . . . The owner
may appropriate the percolations and filtrations as he may
choose, and turn them to profit if he can." Being an
integrant part of the realty, the right to take it away for

use or profit is as much a *profit a prendre* as the right of
fowling, fishing, hawking, or the common of turbary, or
the common of estovers. (Washburn on Easements and
Servitudes, 2d ed., 10; *Hill* v. *Lord*, 48 Me. 100; *Goodrich*
v. *Burbank*, 12 Allen, 459; 90 Am. Dec. 161; *Chatfield* v.
*Wilson*, 28 Vt. 49.) In *Trustees* v. *Delhi*, 50 Barb. 319,
the court, in speaking of subterranean waters, said: "The
water belongs to the soil, is part of it, and may be used,
removed, and controlled to the same extent by the owner."

Respondents claim that neither percolating nor stand-
ing waters can be granted without a grant of the soil
above and below, and that if the reservation under con-
sideration be held to mean both water and soil, the ex-
ception is void, because repugnant to the estate granted.

We do not think this contention is sound. If the deed
in express language had excepted all the water-bearing
lands from the tract granted,—and that is practically,
though not precisely, what was done, because the grantors
reserved the right to enter and "to tunnel, or in any
other manner develop, the waters of the association on
this land,"—the exception would not be repugnant to
the grant. The grant was not of any specific number of
acres. The land was described by courses and distances,
and it was as competent to except from the operation of
the 'grant the marsh or swamp as it was to except ten
feet on each side of the ditch. If a grant of land be for
twenty acres, and one acre be excepted therefrom, the
exception is void, because repugnant to the grant. "So
one may grant a farm, excepting the meadow; but to
grant a pasture and meadow, excepting the meadow,
would be repugnant and void." (3 Washburn on Real
Property, 5th ed., 464.) Nor can it be said that the
exception is void for uncertainty. It appears from the
provisions of the deed that a portion of the tract con-
veyed is water-bearing land, and some of it is so dry
that it requires irrigation to fit it for cultivation. The
subject-matter, therefore, supports the exception, and
the exception is not void, because the boundaries of the
part excepted must be shown by evidence. The evi-

dence shows that of the thirty-two acres granted, there is only from three fourths of an acre to an acre and one quarter which can be used for the production of water, and that this small parcel is capable of yielding over twenty inches of water.   It is apparent, therefore, that the quantity excepted can be easily located and defined, and that there is not much basis for the respondents' disquietude on account of what they term "such a tremendous and destructive power over their property . . . . as that which is now claimed by appellants."

Sections 801 and 802 of the Civil Code are cited to show that the rights reserved were mere servitudes in gross, and incapable of being granted over.

There is no doubt that the servitudes enumerated in section 801 are real servitudes imposed for the benefit of the estate to which the right belongs, and resting upon the estate on which the obligation is imposed; and that those named in section 802 are personal, not attached to any dominant estate, and are not assignable.   We cannot, however, regard the rights in question as mere servitudes, but if they are, they were created as incidents or appurtenances to the ditch and water rights of the company, and passed by the grant to appellants.   At common law a *profit a prendre*, if granted in gross, was regarded as an estate or interest in the land itself.   (6 Am. & Eng. Ency. of Law, 142.)   Such a right "has always been considered in law a different species of right from an easement," and although capable of being transferred in gross, may also be so attached to a dominant estate as to pass with it by a grant transferring the land with its appurtenances."   (*Huntington* v. *Asher*, 96 N. Y. 610; 48 Am. Rep. 652.)

As stated before, the intention of the parties is clearly expressed in the deed, and this being so, little weight should be attached to technical definitions of terms used.   It matters but little what name we give to the rights reserved to the grantor in the deed.   Attempts to create symmetry in the law by classification and designation of classes of different kinds of rights connected

with and springing out of lands are always hazardous.
From whatever stand-point we view the case, and what-
ever may be the true and technical term applicable to
the rights reserved, we are led to a conclusion different
from that reached by the learned judge of the court be-
low.

It is claimed by respondents that all of the water on
the land is necessary for irrigation and domestic pur-
poses, and that the court found this contention to be
true; but we do not so construe the findings.   It is found
that certain waters rise and flow from springs existing
on the land which have been sufficient to furnish water
for the irrigation of a large portion of the land; that
about ten acres of the land have been irrigated, plaintiffs
" using therefor all of the said waters *so rising and flow-
ing* on said lands; . . . . and all of the water rising on
said land was at all of the times herein mentioned needed
for the proper irrigation of said land, and for proper
domestic use thereon"; that defendants have dug and
excavated ditches which have interrupted the flow of a
portion of said waters " so rising and flowing as afore-
said," and prevented the same from flowing into the
conduits of plaintiffs, " and plaintiffs have ever since the
making of said excavation been and now are prevented
from using said portion of said waters for the irrigation
of said land or otherwise "; that defendants, " claiming
they had the right to appropriate and take for their own
use and benefit, and convey from said land, all of the
waters so flowing in said trenches and ditches excavated
as aforesaid, and at least four fifths of the other waters
*rising and flowing on said lands as aforesaid,* entered in
and upon said land, and diverted all of said waters so
flowing in said trenches and ditches excavated as afore-
said, and the greater portion, to wit, at least four fifths
of said other waters *rising and flowing on said land as
aforesaid,* . . . . so that plaintiffs were then and there
wholly deprived of all use thereof"; that plaintiffs have,
since said diversion, turned the water back into their con-
duits, and used the same for irrigation and for domestic

purposes, but defendants still unlawfully threaten to again divert and at all times thereafter to appropriate and take for their own use and benefit all of the waters, so diverted by defendants.

These facts found by the court entitled the plaintiffs to an injunction restraining the defendants from diverting the water which plaintiffs needed for irrigation and domestic purposes, and to that extent the decree is correct; but the judgment went further, and declared that the defendants " have not, nor has either of them, any estate, right, or interest of, in, or to such land and waters, so owned as aforesaid by said plaintiffs, of any part thereof, nor of any easement or servitude upon or against said land, or any part thereof," and adjudged that the defendants and those claiming under them be perpetually enjoined from appropriating or taking " said waters rising and flowing, or hereafter to rise or flow, upon said land so owned by said plaintiffs, or any part thereof, or from in any manner interfering with said plaintiffs' use, control, and possession of said waters, or from in any manner interfering therewith, or from entering in or upon said land, owned by said plaintiffs, to excavate, dig, or bore thereon, or otherwise disturb the soil thereof." These latter provisions of the decree go beyond the relief to which the plaintiffs are entitled. The defendants are entitled to go upon the land for the purpose of making repairs, and to tunnel, or in any other reasonable manner to develop, the water which may exist in the water-bearing lands of the tract, and which may not be required by plaintiffs for irrigation and domestic purposes. How many tunnels or how many ditches may be cut in the land by appellants cannot be determined in advance. All that can be said in that regard is, that they will be held to a reasonable exercise of the right to develop the water remaining after the plaintiffs have secured enough for irrigation and domestic purposes.

The order denying a new trial is affirmed, but the cause is remanded, with directions to the court below to

modify its decree in accordance with the views we have expressed.

HARRISON, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.