[Civ. No. 6654. First Appellate District, Division Two.—April 25, 1929.]

FOREST LAKES MUTUAL WATER CO., a Corporation, et al., Respondents, v. SANTA CRUZ LAND TITLE CO., a Corporation, et al., Appellants.

Peck, Bunker & Peck, Clarence M. Hawkins, James F. Peck, W. B. Bunker, C. M. Peck and H. H. McPike for Appellants.

R. T. Harding for Respondents.

KOFORD, P. J.—Plaintiffs obtained a permanent injunction against defendants enjoining the latter from taking water from Gold Gulch, a stream in the Santa Cruz mountains. Defendants had been conducting it over their lands and into another watershed for use upon lands not riparian to the stream. Defendants appeal upon a reporter's and clerk's transcript.

The defendants own a tract of land lying to the north of a line which runs in a general east and west direction. The

plaintiffs own a tract of land lying south of that line. Most of the part of the stream involved here runs parallel to this line from west to east wholly on plaintiffs' land. But the westerly or upper end of this stream flows down from a northwesterly direction through the lands of the defendants before it reaches the lands of the plaintiffs. This upper part of the stream was sometimes referred to by some as the northwest fork of Gold Gulch and in more recent years by others as Limestone Brook. It is out of this fork that defendants were enjoined from taking water.

Both parties, plaintiffs and defendants, derive title to their respective lands from a common predecessor and grantor, F. A. Hihn, who owned the entire 1300 acres on and before 1888. Plaintiffs' title to the water rights in question comes from their riparian ownership of lands upon the main part of Gold Gulch which flows through their land and from a reservation and grant of the water rights in that part of the stream (the fork or upper part) which flows through defendants' land. When F. A. Hihn conveyed to defendants' predecessor Russell the defendants' tract of land, he reserved and excepted from the land conveyed the said water rights and they were subsequently conveyed to plaintiffs. Hihn, who was plaintiffs' predecessor, remained the owner of the land to the south of that conveyed to Russell, who was defendants' predecessor, and the water thus reserved and excepted flowed in its natural course into what is now plaintiffs' land. Defendants do not expressly admit that they claim title through the said common grantor F. A. Hihn, but we make the statement from the evidence in the record which well establishes that fact and which is also found to be the fact in the findings of the court.

The reservation and exception of water rights which we have referred to is contained in the deed from said Hihn to Wm. Russell, February 23, 1888. It is as follows: "The said Hihn reserving for himself, his heirs and assigns the water of the Gold gulch and of the Shingle Mill creek so called, and the right to take said water out of the beds of the said streams and to conduct it by means of pipes or flume through and over the land hereby conveyed. Also the right to mine in said Gold gulch for gold and silver." This deed also reserved to the grantor the right to construct cer-

tain roads and also gave the grantee the right to construct roads.

The evidence also included a certain deed and agreement of 1912 between Holmes Lime Company and F. A. Hihn Company. These two companies were successors in interest to the grantee and grantor, respectively, in the Hihn-Russell deed of 1888 and were predecessors in interest of defendants and plaintiffs herein, respectively. By this agreement plaintiffs' predecessors F. A. Hihn Company conveyed to Holmes Lime Company certain of the rights reserved by the said Hihn-Russell deed, expressly reserving, however, to said F. A. Hihn Company the right to the water of Gold Gulch. As part of the same transaction Holmes Lime Company deeded to F. A. Hihn Company a 200-foot strip of land north of the stream in such a way as to move the boundary line between the parties about 200 feet northwardly from the stream. After this only that part of the stream which now is within defendants' land was left within the land of defendants' said predecessor. That boundary line still remains the boundary between the lands of the defendants and plaintiffs.

The appellants contend that the reservation of the water of Gold Gulch was not sufficient in description nor in law to have the effect of severing the right of appellants and their predecessors to take the water from that part of the stream from which they were enjoined from taking it. At the trial it was appellants' contention and their allegation in their answer that they were taking water from Limestone Brook and that that was not a part of Gold Gulch stream, but should be considered a different stream. The two parts joined end to end and formed physically one continuous stream.

On this appeal appellants now claim that the part of the stream from which they were enjoined from taking water is the northwest fork of Gold Gulch and as such is again a different stream from Gold Gulch. This claim is based chiefly upon a certain call of the description in the Hihn-Russell deed. In the said deed the southern boundary line was in part Gold Gulch and in part a line which, after running southeasterly down a "steep brushy spur of the mountain," ran thence to a redwood tree "marked 'W' which stands at the mouth of the northwest fork of the

said Gold gulch, etc.,'' It is appellants' contention that the reservation in the deed being in terms the water of Gold Gulch, it did not reserve the water of the northwest fork of Gold Gulch.

The court took evidence upon these points and found that this part of the stream was not referred to as Limestone Brook until 1912; that in 1888, when the reservation of water was originally made, it was known and commonly referred to as Gold Gulch; and that this part of said stream was in fact Gold Gulch. The evidence sufficiently supports the finding and was properly received. A thing may have more than one name, and when referred to by any of its names the same thing is meant and designated. The names of things often are such that evidence is required to show what thing is meant by the name.

Upon these points the deed and agreement of 1912, above referred to, between the predecessors in interest of the parties hereto, contain declarations and recitals which are important evidence in establishing the fact that the reservation of the water of Gold Gulch included that part of the stream from which appellants were taking water. By that transaction the southern boundary of the land of appellant's predecessor was moved away from all of Gold Gulch stream except from the fork which still remained within its land. In this transaction the reservation of the water of Gold Gulch, to be sensible, therefore, must have referred to the upper part or fork of the stream. Furthermore, appellants' said predecessor, while accepting a conveyance of rights with a reservation in respondents' predecessor of the water in ''Gold Gulch,'' made to the latter a deed to the 200-foot strip in which one of the descriptive calls referred to this fork of the stream as ''Limestone Brook, known to grantee as Gold Gulch.'' This transaction amounts to a declaration of the previous owner of appellants' land that the neighboring owners, respondents' predecessors, had reserved the water of Gold Gulch, and that the part of Gold Gulch called at that time, by some, Limestone Brook, was included within the term Gold Gulch. By the said transaction of 1912 respondents' predecessors in interest gave up and conveyed to appellants' predecessors the right previously reserved, to take the water out of the stream and conduct it over the Russell lands, but expressly reserved the

water of the stream. From this it resulted that the former's right came to be the right to that water which the upper owner must not take, but let flow down the stream to the lower owner, who could there take it. The latter had no right to take the water, because he had never obtained that right, it having been expressly excepted from his deed.

Appellants' attack upon the legal sufficiency of the original reservation of water in 1888 is the claim that it was only a personal agreement, by which the grantor reserved to himself alone certain water for his own use, as in the case of *Peterson* v. *McDonald,* 13 Cal. App. 644 [110 Pac. 465]. We find no similarity between the facts of that case and this one. Here in 1888 Hihn reserved for himself, his heirs and assigns, in terms, the water of Gold Gulch and also the right to conduct it over the lands conveyed. The reservation of the water was an exception rather than a reservation, and operated to withhold from the thing granted the right to the water so excepted and described. (9 Cal. Jur. 323; *Van Slyke* v. *Arrowhead etc. Power Co.,* 155 Cal. 675 [102 Pac. 816].) It was a proper subject for reservation and exception from the grant. (*San Rafael Ranch Co.* v. *Ralph Rogers Co.,* 154 Cal. 76 [96 Pac. 1092]; *Walker* v. *Lillingston,* 137 Cal. 401 [70 Pac. 282]; *Painter* v. *Pasadena L. & W. Co.,* 91 Cal. 81 [27 Pac. 539]; *Miller & Lux, Inc.,* v. *I. G. James Co.,* 179 Cal. 690 [178 Pac. 716].)

The transaction of 1912 between the predecessors of the parties to this action also shows that the original reservation of water was not considered to be a personal covenant for personal use. In that agreement all the various reservations and exceptions contained in the Hihn-Russell deed are recited and set forth in full in the following form:

"Whereas, the reservations, conditions and provisions of said deeds from F. A. Hihn to William Russell are as follows:

"The rights, reserved to F. A. Hihn and *now vested in his successor in interest are*":

Here follows the description of each of said rights, including "the right of the water of Gold Gulch."

From a consideration of the evidence, including the declarations of the predecessors in interest of the appellants,

we conclude that the water right in dispute had been properly reserved and described and belonged to respondents. Appellants and their predecessors have had no riparian rights upon the stream since 1888, when the reservation severed the riparian rights then appurtenant to the lands described in the complaint as now owned by appellants. As against the nonriparian appellants, therefore, the respondents, who were clearly riparian owners downstream, were entitled to prevent the diversion by appellants which dimished the natural flow of the stream into and upon respondents' land. (26 Cal. Jur., p. 126, sec. 330; 26 Cal. Jur., p. 538, sec. 787; 25 Cal. Jur., p. 1067, sec. 66; *Scott* v. *Fruit Growers' Supply Co.*, 202 Cal. 47 [258 Pac. 1095].)

In so far as said water right has been effectively reserved, appellants make the technical point that because respondents' 200-foot strip of land lying along the north bank of Gold Gulch was covered in the Hihn-Russell deed minus the water rights, the said strip thereupon became nonriparian; that because said strip is a part of respondents' present lands, the finding which declares respondents' lands to be riparian is at least in part untrue. This point is of no benefit to appellants since respondents would still be entitled to the injunction on account of the many acres of their riparian lands abutting the south bank of the stream, which is many times greater in area than this strip. The exact status of the water rights appurtenant to this 200-foot strip of land is a matter which may not require adjudication until some future time. In the meantime it is no concern of appellants, so far as this litigation goes, their lands described in the complaint being nonriparian to the stream by reason of the facts in this case.

Appellants claim to be the owners of land containing the very uppermost reaches of the stream through a patent to J. H. Logan and that, therefore, they have riparian rights there not severed by the reservation made by Hihn and his successors. If appellants proved title to the said land, which we cannot determine from their brief, the point is immaterial because the judgment appealed from established respondents' right to the water in that part of the stream which is "within the boundaries of defendants' (appellants') land described in the complaint." It thus goes no farther upstream than the land derived by appellants

through Hihn and makes no adjudication about the water rights of the Logan land.

Appellants offered in evidence a United States patent to Sansevain dated 1885, but did not attempt to prove a chain of title from said patent to themselves. It seems to be their claim that this evidence made it necessary for respondents to trace their title from Sansevain. As the record clearly shows that both parties to this action claimed title through a common grantor subsequent to 1885, it was not necessary for either party to prove title in the said common grantor. (*Phillips* v. *Menotti*, 167 Cal. 328 [139 Pac. 796], and authorities cited.)

Up to this point we have referred to appellants and respondents without distinguishing between the two respondents nor between the several appellants and defendants. The respondent Seminary Avenue Land Company, being the owner of the southern tract of land, commenced to subdivide it into lots and sell the same. As a part of the plan Forest Lakes Mutual Water Co., a nonprofit corporation, was organized. To this company the water rights were conveyed for the purpose of administration, the plan being to issue shares of stock in the mutual water company to each lot purchaser so that in this way each lot owner will own his share of water rights. The company was, therefore, a distributing agency and trustee for the owners of the land and the court found that said water company was the owner in trust for the Seminary Avenue Land Company of the water rights. Appellants' attack upon this finding is unsupported by the printing of evidence except the deed. The evidence printed by respondent fully supports the finding. The conveyance by Seminary Avenue Land Co. to Forest Lakes Mutual Water Co. of the water rights was not such a conveyance as severed and destroyed the riparian rights. Appellants' argument is that the land company owned no water rights, having conveyed them, and so was not a riparian owner and that the water company had no land and so could not enforce riparian rights. The argument, of course, falls before the finding and the fact that one company is but the agent and instrumentality of the other. (*Estate of Thomas,* 147 Cal. 236, 241 [81 Pac. 539] ; *Riverside Land Co.* v. *Jarvis,* 174 Cal. 316, 327 [163 Pac. 54] ; 26 Cal. Jur. 449.) Some technical points are made concerning the issuance of stock

of the Mutual Water Company and the recordation of its by-laws. These points arise from the fact that the arrangement between the two parties plaintiff are in their transition stage. This is an action in equity. The good faith of the plan of the parties plaintiff is not questioned and no useful result will be obtained by analyzing these points. So long as the plaintiffs are content to maintain this action as joint plaintiffs no nice distinction need be made as to exactly what rights each plaintiff owns at this particular time. Between the two their rights are complete.

The parties defendant are similarly complicated. Fetherston at first shared ownership with other individual defendants and then became the sole owner. The Santa Cruz Land Title Company is his holding company, holding the land in trust for him. The Felton Water Company is his agent, trustee and instrumentality. Fetherston owns all the issued shares of the Felton Water Company except a few qualifying shares. The stock ownership and agency of these two companies are directly alleged in the answer filed by Fetherston. Following these facts the court's judgment and injunction ran against "the Felton Water Company, Inc., the agency and instrumentality of George Fetherston." So far as Fetherston had admitted and, in fact, alleged this agency and instrumentality, he as an appellant here cannot complain of this part of the judgment. ▮▮▮ It is proper and, indeed, usual for an injunction to run not only against the party to the action but also against all his agents, employees, etc. (14 Cal. Jur. 279). The determination of the agency is, of course, binding upon Fetherston. The Felton Water Company was not a party to the suit, however, did not appear therein by any pleading and, of course, is not an appellant here. The determination of the agency, therefore, is not necessarily binding upon that corporation as an entity, although the injunction is binding on everyone acting under the named parties to the suit with notice. Granting that the injunction and judgment should not have named the Felton Water Company by name as though it were a party to the action and should have run only against the named parties defendant and their agents, employees, etc., in general terms, yet the error is not one for which appellant Fetherston can complain, unless he is what he now claims not to be, the *alter ego* of said company. In any event it is

binding on him individually. Whether that company has the right to have its name removed from the judgment and injunction is a matter that should not be decided in the absence of jurisdiction of the person of that company.

This disposes of all the points raised by appellants. The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.