[Civ. No. 3643. Fourth Dist. Apr. 4, 1947.]

CARLSBAD MUTUAL WATER COMPANY (a Corporation), Appellant, v. SAN LUIS REY DEVELOPMENT COMPANY (a Corporation) et al., Respondents.

Eberhard & Zeigler, Ray C. Eberhard and Elisabeth Eberhard Zeigler for Appellant.

Gray, Cary, Ames & Driscoll and John M. Cranston for Respondents.

GRIFFIN, J.—This action was commenced by plaintiff and appellant Carlsbad Mutual Water Company, a corporation, against defendants and respondents San Luis Rey Development Company, a corporation, et al., to enjoin it and other named defendants from diverting waters of the San Luis Rey River.

Plaintiff company was organized for the sole purpose of supplying water for domestic, irrigation and other uses, to the holders of its capital stock. It is also the sole source of supply of water for the community of Carlsbad. It has, since 1914, secured, substantially, its entire water supply from the surface and subterranean waters of the San Luis Rey River at a point only a few miles east of its outlet into the Pacific Ocean. Plaintiff's complaint alleges that it owns 15 acres of land riparian to the San Luis Rey River; that in 1913 and 1914, the South Coast Land Company, plaintiff's predecessor in interest, commenced and completed the drilling and construction of wells and pumping plants on said land for the purpose of extracting and developing water from said river and the diversion thereof to land in and about the town of Carlsbad; that at that time the South Coast Land Company owned approximately 1,100 acres of land in the Mission Basin, riparian to the river, and also owned certain rights, duly conveyed to it by other riparian owners, to develop and convert any part of said water for use in places within and without that watershed; that on March 14, 1915, that company deeded to plaintiff the right to enter upon certain described lands embraced within the 1,100 acres and to pump water to the extent of 200 miner's inches to other lands.

The answer admits most of these allegations but denies the rest of them by reason of lack of information.

At the trial it was stipulated between the parties that "plaintiff company had sufficient interest to maintain this action." Plaintiff is not only an appropriator but also an

overlying landowner, as well as a riparian owner. We will therefore assume that this dispute involves rights existing between a lower and upper riparian landowner, as well as a determination of rights between an appropriator and an upper riparian landowner.

In *Peabody* v. *City of Vallejo*, 2 Cal.2d 351 [40 P.2d 486], it was said, quoting from the syllabus, that "In addition to the rule of reasonableness of use as previously applied, the constitutional amendment whereby section 3 was added to Article XIV has enjoined the doctrine of reasonable use as between a riparian owner and an appropriator, the limitations and prohibitions of said section, and the rule of reasonable use, now applies to every water right and every method of diversion; and its plain and positive mandates, which admit of no exception, apply to the use of all water, under whatever right the use may be enjoyed." (See, also, *Jones* v. *Pleasant Valley Canal Co.*, 44 Cal.App.2d 798, 807 [113 P.2d 289]; and *Larsen* v. *Apollonio*, 5 Cal.2d 440 [55 P.2d 196].)

On October 7, 1938, the Division of Water Resources made an order granting plaintiff the right to divert, from the river, annually, 750 acre feet of water.

Plaintiff claims that defendants, who own an aggregate of approximately 1,700 acres of land located about 10 miles above plaintiff's point of diversion, are preparing to and intend to, pump and divert water from said river and use it on their lands for irrigation and other purposes under a claim of riparian right. In the ownership of their respective parcels of land defendants are successors in interest of William E. Gird. On January 24, 1906, Gird executed a deed to one Charles Forman, which by its terms conveyed "all riparian rights to the waters of the San Luis Rey River that may belong to or be appurtenant to" certain described lands, which included all of the land owned by all of the defendants and other land adjacent thereto. Following the description of the land, said deed contains the following clauses: "Together with the right to divert, by either conduits, canals, pumping plants or other devices, water from the San Luis Rey River at points above the lands of the party of the first part hereinabove described. Together with the right to impound waters of the San Luis Rey River by the construction of a dam at a point in or above Section 4, Township 11 South, Range 2 East, S. B. B. & M., with the right to conduct said waters so impounded or diverted to such lands as party of the

second part may desire. . . . But this conveyance is made subject to the right of the party of the first part, and *the right is hereby expressly reserved to develop, pump and extract waters from the lands hereinabove described* for the use of irrigation, domestic and other purposes upon the lands hereinabove described. The grantee hereby expressly waives any and all claims for liability on the part of the grantor for damages to the pipe lines or canals of grantee crossing said property growing out of the use of his property by said grantor.''

The Henshaw Dam was erected 17 miles upstream from defendants' property by the San Diego County Water Company, successor in interest to Charles Forman. It now impounds all the surface and subterranean flow of the river back of said dam which would have otherwise flowed down said river to the lands of defendants.

Subsequent to the execution of that deed, defendant San Luis Rey Development Company acquired the 1,700 acres aforementioned. On February 15, 1944, the defendant development company executed deeds conveying to certain other defendants portions of the 1,700 acres. There was conveyed with each of the several deeds one share of stock in the San Luis Rey Heights Mutual Water Company for each one acre of land acquired.

Defendants admit in their pleadings that they intend to pump, extract and divert from said river, and use on their respective lands, reasonable quantities of water for domestic and irrigation purposes.

Plaintiff alleges in its complaint and claims that defendants, unless restrained, will pump, extract and divert from said river large quantities of water, and will deprive plaintiff and other riparian owners below of water which they are rightfully entitled to use and appropriate for the purposes heretofore described.

Plaintiff also claims (based upon Bulletin 48a of the Division of Water Resources in evidence) that if defendants are permitted to take water from the river to which they are not entitled the inevitable result will be that, sooner or later, the flow into the Mission Basin from which plaintiff's water supply is derived, will be insufficient to prevent the intrusion of salt water from the ocean and that that basin will be destroyed as a source of water for any purpose.

After issue was thus joined, counsel for the respective parties signed a written stipulation agreeing that they all desired to conserve time and expense in the trial of the action, and agreed that the "legal effect of the two deeds, . . . Exhibits 'A' and 'B,' be first determined by the court; . . . That the issues raised by paragraphs XII and XVII (the deed from Gird to Forman and the deed, dated February 19, 1944, from the Development Company to San Luis Rey Heights Mutual Water Company, of all water and water rights appurtenant to the described land) . . . be first tried and determined . . . and that the evidence be limited and restricted to such issues; . . . That no evidence be . . . received respecting the other issues raised by the complaint and answer pending" such determination. It was then stated by counsel for defendants that in view of the stipulation, that they need not go any farther and might proceed with the argument as to the meaning of those deeds.

The court granted the request and the deeds themselves were admitted in evidence. Argument of counsel ensued. Some evidence was taken explaining the map received in evidence which set forth the acreage and ownership and the use or uses to which it was and had been put. A witness described the pumps that had been installed in the river basin, the location of present tanks now used and the dirt fill or reservoir constructed for the purpose of holding and storing water pumped from said river lands. After considerable argument it was stipulated that Henshaw Dam has never overflowed since it was built; that no surface water has been released to defendants from the dam; that no sufficient information is available as to the subterranean flow, and it was finally stipulated that during the negotiations in reference to the original sale of the water rights for $2,500, a letter, dated January 22, 1906, was written by Forman to Gird, which read in part as follows:

"We have added a clause to the agreement (clause referring to reservation of right to use water on his land and waiver of damages), as you suggested, and we hope it will be satisfactory to you. It is our present intention to use nothing but a pipeline across your property."

An objection to an offer to prove other surrounding circumstances as to the execution and meaning of the clauses in the deed was sustained. The court then expressed the fact that it was "*confused about the issue or issues that you wish to*

*try first.* . . . Here is what I had in mind, . . . that if the use of this water by the defendants has no disadvantage to the plaintiff, then of course you are not in court. You would have to establish that by some proper proof showing that by the use of this water you were deprived in some way of the use of water from the river and there wasn't enough there to supply . . . plaintiff. MR. HIGGINS: Well, if Your Honor please, we are glad you brought that up because that is one of the things that we are postponing depending upon Your Honor's construction of the deed. . . . If Your Honor holds one certain way then we are going to ask that the help of the Division of Water Resources be secured as to the use of water, the amount of damages and the amount that is there and available, and all that, but for the purposes up to now, under our stipulation, we are only attempting to try the validity of these two deeds. THE COURT: I wanted to be clear about that before we went farther.''

After further argument the case was submitted on the issues presented for determination. The trial judge signed a memorandum opinion reciting that the parties had stipulated ''to try and submit . . . the following issues and no others, at this time.'' ''1. Did William E. Gird, the predecessor in interest of the defendants, by his conveyance of January 24, 1906, to Charles Forman, extinguish the riparian rights appurtenant to the tract of land now being developed by the defendants? (2) Did the conveyance by San Luis Rey Development Company to the San Luis Rey Heights Mutual Water Company, dated February 19, 1944, together with conveyances to individual purchasers of tracts of land not contiguous to the stream, and the plan adopted to convey to such purchasers one share of stock in the said water company, for each acre of land conveyed to such purchasers, extinguish the riparian rights appurtenant to such non-contiguous tracts so conveyed?''

After discussing the several cases cited, the trial judge stated that the granting and reservation provisions in the deed were reconcilable; that ''Riparian rights include the right to have the entire flow of the stream pass through the lands of the riparian owner; as well as the right of the riparian owner to use the waters of the stream''; that ''When by this deed Gird reserved to his land the right to develop, pump and extract waters from the lands for irrigation, domestic and other purposes, he did not thereby reserve *all* of his riparian rights, thereby establishing a repugnancy in the deed which is ir-

reconcilable; but he did dispose of his right to have the continued flow of the whole water of the whole watershed of the San Luis Rey River, pass through his land; that is, he waived the right to have the waters of the Warner's basin (or Henshaw basin), flow by his land. He reserved less than the whole granted.''

As to the other issue, he stated: ''The effect of the establishment of this right upon the use of water by other riparian owners, and upon other water users with other established rights has been expressly reserved for further trial and determination. Let the further trial of this matter as to the other issues involved be set down for a date certain.''

For some reason the court then signed findings reciting that the issues were limited as set forth in the stipulation and ''reserved jurisdiction'' to take evidence and make findings on the remaining issues. It then found generally in accordance with the facts here related and then specifically found that the 1,700 acres that belonged to defendant development company were riparian to the San Luis Rey River; that it was subdivided and proportionate shares of said riparian rights were sold to the purchasers of the subdivided property through the agency of the San Luis Rey Heights Mutual Water Company, and concluded that the lands belonging to the defendants herein named, owning property in the subdivision, were riparian to the San Luis Rey River; that the deed from Gird to Forman granted Forman and his successors in interest the right to interrupt and interfere with the natural flow of the river, and to dam it and impound waters thereof by construction of a dam above the point indicated in the reservation in the deed, and to divert waters so impounded to such lands outside the watershed of said river; that said deed did not grant him any other or further riparian rights nor did said deed divest said lands then owned by Gird of the right to divert from the river and use upon said lands the water which Forman did not actually impound or divert; that as to all water not actually impounded or diverted by him, Gird retained and reserved complete riparian rights to use said water upon all lands described in said deed, and defendants herein succeeded to all rights which Gird reserved; that the deeds to the property in the subdivision and the sale of the shares of water stock were executed as a part of a scheme or plan for the subdivision of the lands formerly owned by the development company; that each defendant is entitled, as a riparian owner, to use the waters of the river upon the portion

of land referred to in the complaint, for all purposes for which any other riparian owner might use it, subject to the right of the San Diego County Water Company, as successor in interest of Charles Forman, to impound the waters of said river at any point in or above that described in the deed, and to divert any waters so impounded. It finally concluded that the contemplated use of the waters of the river by defendants upon the land referred to in the complaint is not a violation of any right of plaintiff, and therefore it is not entitled to any relief against defendants. Judgment was entered accordingly. After the court denied a motion for new trial plaintiff appealed.

Plaintiff's main argument is that since Gird deeded to Forman "all riparian rights to the water" of said river "that may belong to or be appurtenant" to such land belonging to the grantor, the land is divested of its riparian right, and an independent clause in said deed reserving the right "to develop, pump and extract waters *from the lands* . . . for the use of irrigation, domestic and other purposes" upon the land, is a reservation repugnant to the grant and therefore void.

We are in accord with the court's finding that the reservation clause is not repugnant to the general grant. (Civ. Code, §§ 1638, 1641, 1652; *Los Angeles & Salt Lake Ry. Co.* v. *United States*, 140 F.2d 436; *Crane* v. *Stevinson*, 5 Cal. 2d 387 [54 P.2d 1100]; *Pavkovich* v. *Southern Pac. R. Co.*, 150 Cal. 39 [87 P. 1097]; 4 Tiffany on Real Property, 3d ed., vol. 4, § 975, pp. 54-55; *Hartwig* v. *Central-Gaither Union School Dist.*, 200 Cal. 425 [253 P. 733]; *Seligman* v. *Carr*, 8 Cal.App. 572, 575 [97 P. 324]; *Burnett* v. *Piercy*, 149 Cal. 178 [86 P. 603].)

We also concur in the finding that defendants herein succeeded to all riparian rights which William E. Gird *reserved* in the deed to Charles Forman. (*Lux* v. *Haggin*, 69 Cal. 255, 393 [4 P. 919, 10 P. 674]; *Tennant* v. *John Tennant Memorial Home*, 167 Cal. 570 [140 P. 242]; *Painter* v. *Pasadena Land & Water Co.*, 91 Cal. 74 [27 P. 539]; *Spring Valley Water Co.* v. *County of Alameda*, 88 Cal.App. 157 [141 P. 38]; *Barnett* v. *Barnett*, 104 Cal. 298 [37 P. 1049].)

A deed containing an exception passes all the rights embraced in the terms of the grant less what is included in the exception. (6 Thompson on Real Property, Permanent ed. § 3471, p. 698; 84 A.L.R. 1063-1064; *Jacobs* v. *All Persons*, 12 Cal.App. 163 [106 P. 896].) The deeds executed by the

San Luis Rey Development Company to the San Luis Rey Mutual Water Company and to the other named defendants, transferred proportionate shares of *those water rights* to the purchasers of tracts within the original tract of land. They were so executed as to be a part of a scheme or plan for the subdivision of the entire tract. We agree that each owner is entitled to use *such waters* on the portion of lands referred to in plaintiff's complaint. (*Forest Lakes Mutual Water Co.* v. *Santa Cruz Land Title Co.*, 98 Cal.App. 489 [277 P. 172]; *Stesel* v. *Santa Ana R. Water Co.*, 35 Cal.App.2d 117 [94 P.2d 1052]; 25 Cal.Jur. 1085, § 90.)

We are not in accord with the court's finding that defendants' use of the water is subject only "to the right of the San Diego County Water Company, as successor in interest of Charles Forman, to impound waters of said river at any point in said river *in and above sec. 4*, T. 11 S. R. 2 E., S. B. M., and to divert any waters so impounded" and that defendants' use or contemplated use of the waters of the river upon other lands is not in violation of any right of plaintiff or that plaintiff is not entitled to any relief.

In addition to the general grant of all riparian rights, the deed specifically granted to Forman "the right to divert, by either conduits, canals, pumping plants or other devices" water from the river at any point *above defendants' lands*, and did not limit such point of diversion to the Henshaw Dam or to any specified point above the grantor's land.

By the grant deed, Gird conveyed to Forman "all riparian rights to the waters of the San Luis Rey River that may belong to or be appurtenant to" certain described lands. This clause was an absolute grant of all such rights, with the reservation or exception of "the right to develop, pump and extract waters from the lands. ▮ If the reservation clause was repugnant to that grant and absolutely irreconcilable with it, it was void and the former granting part would prevail and defendants would have acquired no riparian rights by their deeds. (Civ. Code, § 1070; *Painter* v. *Pasadena Land & Water Co.*, *supra*, p. 83.) If the reservation in the deed is reconcilable and not repugnant to the granting clause, the extent of defendants' riparian rights must be measured by what was *reserved or excepted by that clause*. (*Spring Valley Water Co.* v. *County of Alameda, supra; Painter* v. *Pasadena Land & Water Co., supra; Forest Lakes Mutual Water Co.* v. *Santa Cruz Land Title Co., supra;* Civ. Code, § 1069.)

■ A riparian right has been well defined, and such right is a part and parcel of the land. (25 Cal.Jur. p. 1060, § 58 et seq.) ■ All riparian owners of a water course have a common right therein, each being entitled to sever his share for use on his or her riparian land. (*Anaheim Union Water Co.* v. *Fuller*, 150 Cal. 327 [88 P. 978, 11 L.R.A.N.S 1062].) ■ Such riparian owner, by reason of the situation of his land on the stream, has the right to make any reasonable and beneficial use to himself on the riparian land. (*Mentone Irr. Co.* v. *Redlands etc. Power Co.*, 155 Cal. 323 [100 P. 1082, 17 Ann.Cas. 1222, 22 L.R.A.N.S. 382].) ■ With respect to subsurface flow, all riparian owners share correlatively just as in the surface flow. (*Verdugo Canon Water Co.* v. *Verdugo*, 152 Cal. 655, 685 [93 P. 1021].) ■ One riparian owner cannot, by grant or otherwise, extinguish or diminish the riparian rights attached to the lands of other nonconsenting riparian owners. (*Spring Valley Water Co.* v. *County of Alameda, supra.*) ■ In order to assure to each riparian owner his share of the water, it may be apportioned among the various users in a suit in equity brought for the purpose. It is necessary to bring into court only those between whom there is a dispute as to relative rights. In such action the court may regulate the use of water among the riparian owners so that each obtains his just proportion, and in so doing it may divide the water on a time or rotation basis, or on a quantitative basis. As to subflow or underground waters, a definite capacity should be fixed, for it is said to be impracticable to give a proportion of the stream. It is impossible to formulate any mathematical rule to determine such rights. Each case will be decided on its own circumstances, which are questions of fact for the trial court. (25 Cal.Jur. pp. 1139-1140, § 152; *Stanford* v. *Felt*, 71 Cal. 249 [16 P. 900].)

These general rules prevail except such as have been modified by the adoption of article XIV, section 3 of the Constitution. ■ Under the new doctrine, established by the Constitution, this rule has been declared, that when a riparian or overlying owner brings an action against an appropriator, it is no longer sufficient to find that the plaintiffs in such action are riparian or overlying owners, and, on the basis of such finding, issue the injunction, but the court must determine whether such owners, considering all the needs of those in

the particular water field, are putting the waters to any beneficial uses, giving consideration to all factors involved, including reasonable methods of use and reasonable methods of diversion, and from a consideration of such uses, the trial court must then determine whether there is a surplus in the water field subject to appropriation. ■ The long-standing riparian doctrine has been modified and a riparian, as against an appropriator whose right has not ripened into a right by prescription, is not entitled to the full flow of the stream as it is wont to flow in a state of nature, without diminution by the appropriator, and his rights are limited by the doctrine of reasonable use, which doctrine applies between riparian owners and appropriators, and between overlying owners and appropriators. ■ The new doctrine not only protects the actual reasonable beneficial uses of the riparian, but also his prospective reasonable beneficial uses, and the trial court should declare that such future or prospective reasonable beneficial uses are paramount to any right of the appropriator, and at the same time permit the appropriator to use the water until the riparian needs it, thus, at all times, putting all of the available water to beneficial uses. It is also suggested that in such cases the trial court might well, by appropriate provisions in its judgment, retain jurisdiction over the cause, so that when a riparian claims the need for water, the right to which was awarded him under such a declaratory decree, the trial court may determine whether the proposed new use, under all the circumstances, is a reasonable beneficial use, and, if so, the quantity required for such use. (*Tulare Irrigation District* v. *Lindsay-Strathmore Irrigation District*, 3 Cal.2d 489 [45 P.2d 972, 1014].)

Chapter 586 of the Statutes of 1913, adopted the Water Commission Act. The Statutes of 1943, chapter 368, established a water code. Section 100 thereof declares that because of the conditions prevailing in this state, the general welfare requires that the water resources of the state be put to beneficial use to the fullest extent to which they are capable, and that the conservation of such water is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. Section 101 recites that nothing in section 100 or section 101 shall be construed as depriving any riparian owner of the reasonable use of water of the stream to which his land is riparian under reasonable methods of diversion and use, or of depriving any

appropriator of water to which he is lawfully entitled. Section 102 provides that all water within the state is the property of the people of the state, but the right to the use of water may be acquired by appropriation in the manner provided by law. Section 102 provides that the people of the state have a paramount interest in the use of all the water of the state and that the state shall determine what water of the state, surface and underground, can be converted to public use or controlled for public protection. Section 226 sets forth the powers of the department. The act provides that courts may make reference of these subject matters to such department. (Water Code, §§ 2000, 2001; *Peabody* v. *City of Vallejo, supra,* p. 374.)

Riparian rights may be severed from land by grant, condemnation, or by prescription. (*Gould* v. *Stafford,* 91 Cal. 146, 155 [27 P. 543].) It was there said:

"If, therefore, the grantors of the plaintiff, while they owned the land, granted to the corporation . . . all *or any portion* of their riparian rights to the waters of Montecito Creek, they thereby, *to the extent of such grant,* severed from the land their riparian rights, and disabled themselves to grant such rights to the plaintiff." (Italics ours.)

By the grant deed here involved, Gird sold to Forman his riparian rights, with certain reservations or exceptions. The construction by the trial court that this sale was, in effect, a sale of *a portion* of those riparian rights is a reasonable construction and will not be disturbed on appeal. (*Tide Water Asso. Oil Co.* v. *Curtin,* 41 Cal.App.2d 884 [107 P.2d 945].) Gird's successors in interest now contend that notwithstanding such sale of a greater portion of the riparian rights they still have the right to exercise their original and full riparian privileges and use, irrespective of the effect such use may have upon lower riparian owners or appropriators and their rights. The grantee of the riparian rights, Forman, and his successors in interest, have actually impounded and are diverting all of the water of the river arising above the Henshaw Dam. They permit none of that water to reach defendants' lands. To permit defendants to use water from the stream to irrigate their lands as though such waters were not thus impounded and diverted, would result in a double riparian right for defendants' lands. This, to us, seems inequitable and lacking in judicial sanction.

It was said in *Duckworth* v. *Watsonville W. etc. Co.*, 158 Cal. 206, 217 [110 P. 927]:

"The McKinley deeds conveyed the entire right to use this water for irrigation on these lands to the defendant's predecessors and it now belongs to the defendant and not to Duckworth. A man may not eat his cake and have it. A man who sells a right to do a thing cannot thereafter exercise the right himself, except by permission of the buyer, and it is immaterial that the buyer may not be using or exercising it."

The conclusion here reached makes it essential that evidence be taken and some finding be made as to the extent of the riparian rights originally owned by Gird, the amount of riparian water actually impounded and diverted by Forman or his successors, and the extent or proportion of the riparian rights to the waters of the San Luis Rey River actually reserved by the grantor under the reservation clause, and what amount is being put to beneficial uses. If, under the reservation clause, defendants do not have sufficient water for domestic and irrigation purposes, there is open to them the same right which any other nonriparian owner has to make application to the Division of Water Resources for a permit to appropriate water, and if that state agency finds that water is available, a permit may be granted. (*Bloss* v. *Rahilly*, 16 Cal.2d 70 [104 P.2d 1049].) Of course, before the plaintiff could invoke the power of a court of equity to restrain the diversion of water above its lands, it would be necessary for it to show first, that there was a wrongful diversion of water above its lands, and second, that the amount wrongfully diverted would be rightfully used by plaintiff and that the water is being used or would be used for reasonable and beneficial purposes. (*Modoc L. & L. S. Co.* v. *Booth*, 102 Cal. 151, 156 [36 P. 431]; *Miller* v. *Bay Cities Water Co.*, 157 Cal. 256 [107 P. 115, 27 L.R.A.N.S. 772]; Water Code, §§ 100, 101; art. XIV, § 3, Constitution of California.)

By reference to the memorandum opinion it is apparent that the trial court did recognize the necessity of taking further evidence. For some undisclosed reason, without setting the case down for further trial, it signed the findings above mentioned and entered a final judgment decreeing that plaintiff was not entitled to any relief.

Our system of procedure contemplates that there shall be but one final judgment in a case, and in the absence of a clear showing, it is not to be presumed that a trial court

would attempt to dispose of a case piecemeal by successive final judgments, each covering a part of the matters in controversy. In general, there must be an express adjudication of the subject matter of the controversy as to all the parties plaintiff and all of the parties defendant, otherwise there is no final disposition of the matters litigated between the parties. (2 Cal.Jur. pp. 140-141, § 19.)

The order denying the motion for a new trial not being an appealable order, the attempted appeal therefrom is dismissed. (Code of Civ. Proc., § 963; *Chichester* v. *Seymour,* 28 Cal.App.2d 696 [83 P.2d 301].)

Judgment reversed.

Barnard, P. J., and Marks, J., concurred.