[Civ. No. 2225.    Third Appellate District.—April 30, 1921.]

## CATHERINE J. WILLIAMS, Respondent, v. MANUEL COSTA et al., Appellants.

[1] WATERS AND WATER RIGHTS — APPROPRIATION — TRESPASS UPON PRIVATE LAND.—An appropriator must have lawful access to the stream before he can exercise water rights, and an appropriation cannot be initiated unlawfully by a trespass upon private land, and no rights can be obtained thereby against the land owners whose land is trespassed upon.

[2] ID.—RIPARIAN OWNERS—APPROPRIATION.—While the right to take water from a stream as against riparian owners may be acquired by prescription, no such right may be acquired by prescription or by appropriation by a lower as against an upper riparian owner in the same stream.

[3] ID. — RIGHTS OF RIPARIAN OWNERS. — All riparian owners are equally entitled to a reasonable use of the waters flowing along or through their lands.

APPEAL from a judgment of the Superior Court of Sierra County. Stanley A. Smith, Judge. Reversed.

The facts are stated in the opinion of the court.

Nilon & Nilon, Cheney, Downer, Price & Hawkins and Ayres & Gardiner, for Appellants.

Jerome L. Van Derwerker and W. I. Redding for Respondent.

BURNETT, J.—This is an action to determine conflicting claims to the waters of Purdy Creek, sometimes known as Long Valley Creek, in Sierra County, California. Plaintiff also claims damages on account of defendants' alleged wrongful diversion of these waters. The trial court made its findings and rendered its decree giving to plaintiff the right to the use of two-fifths and to defendant Catherine L. Lemmon three-fifths of the waters of said creek, enjoining all the defendants from interfering with the right of plaintiff to the use of said two-fifths of said waters,

---

3. Nature of riparian rights, notes, 9 **Ann. Cas.** 1235; **Ann. Cas.** 1913E, 709; **Ann. Cas.** 1915C, 1026.

awarding plaintiff damages against defendant Costa for
$1,654, and allowing plaintiff her costs and disbursements,
taxed at $377.05, against all of the defendants. The appeal
comes to this court upon the judgment-roll and a bill
of exceptions.

The facts relative to this litigation as found by the court
are as follows: "That the plaintiff now is and for more
than forty-two years last past she and her grantors and
predecessors in interest have been the owners of all that
certain ranch situated in Long Valley, County of Sierra,
State of California, and more particularly described as fol-
lows: The W. ½ of NE. ¼ of Section 13; all that portion
of the NW. ¼ of the SE. ¼ of said Section 13, which lies
north of the division fence between the Williams and Purdy
ranches, and all that portion of the NE. ¼ of the SW. ¼
of said Section 13, which lies north of the division fence
between said Williams and Purdy ranches, in Township
21 North of Range 17 East, M. D. B. & M., and known
as the Williams ranch; that Purdy Creek is a natural
water course with well defined bed and banks, having its
source on the western slope of the Sierra Nevada Moun-
tains, in Ball's Canyon, in the County of Sierra, State of
California, and flowing through said Ball's Canyon, to,
upon and across the lands of plaintiff and the said de-
fendant, Catherine L. Lemmon; that during the winter and
spring months a large and irregular amount of water flows
down said stream; that the period of high water in said
creek usually ends about the first of May when the quan-
tity of water flowing in said stream greatly diminishes,
and that the lowest stages are usually in August and Sep-
tember; that the said W. ½ of NE. ¼ and all that portion
of the NW. ¼ of the SE. ¼ which lies north of the divi-
sion fence between the Williams and Purdy ranches, of Sec-
tion 13, in Township 21 North of Range 17 East, M. D. B.
& M., aggregating not to exceed one hundred acres, border
on the said Purdy creek and are riparian thereto, and are
the only lands in said Williams ranch riparian thereto;
that plaintiff now is and continuously for more than thirty
years last past she and her grantors and predecessors in
interest have been entitled to the beneficial use of two-
fifths of the waters of said Purdy creek for the irrigation
of the said lands comprising said Williams ranch and for

domestic, culinary and household purposes and watering
live stock thereon; that continuously during all of said
time, except since on or about the 8th day of July, 1916,
the plaintiff and her grantors and predecessors in interest
have used said two-fifths of the waters of said Purdy
Creek for said beneficial uses at and upon said Williams
ranch, and in the irrigation of eighty-eight acres of the
said lands; that said two-fifths of the waters of said
Purdy Creek were appropriated by the grantors and prede-
cessors in interest of plaintiff, by diverting the same from
said Purdy Creek by means of a certain ditch known as
the Williams Ditch and having its head dam on said Purdy
Creek in the SE. 1/4 of the SW. 1/4 of Section 13, Town-
ship 21 North, Range 17 East, M. D. B. & M., and con-
veying said waters to and upon said Williams ranch through
said ditch and two other ditches known as the Williams
east ditch and the Williams west ditch; that all of the
waters of said Purdy Creek are not necessary for the irriga-
tion of the lands comprising said Williams ranch and for
domestic, culinary and household purposes and watering
live stock thereon; that two-fifths of the waters of said
stream, but no greater amount, are necessary for said
purpose.

"That on or about the 8th day of July, 1916, said de-
fendant, Manuel Costa, diverted all of the waters of said
Purdy Creek, to the extent of the capacity of the flume
crossing said creek, during the irrigating season, against
the will and without the consent of the plaintiff, and con-
tinues so to divert the same during the whole of the irrigat-
ing seasons of the years 1917 and 1918, except about four
miner's inches thereof, which he allowed to flow, during a
portion of said time, into said Williams' ditch; and that
during much of said time there was more than fifty miner's
inches of water flowing in said Purdy Creek; that neither
of said defendants, A. Jensen, Russell Jensen nor Catherine
L. Lemmon, counseled, aided, abetted, ordered or directed
said defendant, Manuel Costa, to so divert the waters of
said stream; that the lands comprising said Williams ranch
are fertile and have been rendered very productive by
plaintiff and her grantors and predecessors in interest, by
irrigating the same with the waters of said Purdy Creek
by means of said ditches and the overflow, seepage and

percolation of the waters of said creek; and that continuously for more than thirty years last past and until the year 1917, plaintiff and her grantors and predecessors in interest raised large crops of hay thereon; that the damage to plaintiff's hay crop in the year 1917 was the sum of $450.00 caused by the said diversion of the said waters of Purdy Creek by said defendant, Manuel Costa; that the damage to plaintiff's hay crop in the year 1918 was the sum of $1204.00 caused by the said diversion of the said waters of Purdy Creek by said defendant, Manual Costa; that there was no damage to plaintiff's hay crop in the year 1916, and she was not damaged by being deprived of water for domestic purposes, or for watering her garden, or fruit trees, or by being required to purchase feed for her stock, or in feeding or caring for the same, or by being required to procure pasturage therefor, or for injury or damage for inconvenience or loss or expense caused by the said diversion of said waters of said Purdy creek by said defendant, Manuel Costa; that the defendant, Catherine L. Lemmon, is the owner of the legal title of the lands and premises described in defendants' cross-complaint, filed in this action on the 10th day of August, 1918, except those portions of the NW. ¼ of the SE. ¼ and NE. ¼ of the SW. ¼ of Section 13, T. 21 N., R. 17 E., M. D. B. & M., above expressly found to be owned by the plaintiff; that all of said lands are not upon or along the banks of said Purdy Creek and are not riparian thereto; that the only portion of said lands which border on said Purdy Creek and are riparian thereto are the following, viz.: The NE. ¼ of the NW. ¼ of Section 24, and the SE. ¼ of SW. ¼; SW. ¼ of SE. ¼ and all that portion of the NW. ¼ of SE. ¼ of Section 13 which lies south of the division fence between the Williams and Purdy ranches, aggregating not to exceed one hundred forty-five acres riparian to said stream.

"That said defendant, Catherine L. Lemmon, is the owner of the right to the use of three-fifths of the waters of said Purdy Creek, and of the right to divert the same from said stream to and upon the lands owned by her and described in the cross-complaint of defendants filed herein on the 10th day of August, 1918; that the defendants, or each of them, are not and they, or their grantors or pre-

decessors in interest, or each or any of them, have not been for more than ten years last past, or for many years last past, or since December, 1862, the owners of the prior right during the irrigation season of each year, or from April 1st, to November 1st, of each year, entitled to the use of 200 miners inches, or to the equivalent of 200 miners inches measured under a four-inch pressure, or any other quantity, except as hereinafter stated, of the waters of said Purdy Creek for the irrigation of their said lands or for stock or domestic purposes, and did not divert from said stream, or use for the irrigation of said lands, or the crops growing thereon, or for stock or domestic purposes, or under a claim of the exclusive right so to do, or openly, notoriously, continuously, or uninterruptedly, or adverse or hostile to everybody, or especially to all claims or rights of the plaintiff, said miners inches of the waters of said Purdy Creek, except when three-fifths of the waters of said stream equalled said 200 miners inches; and that 200 miners inches of the waters of said stream were not necessary for the proper irrigation of said lands and the crops growing thereon and for stock and domestic purposes.

"That all of said lands of plaintiff and defendant, Catherine L. Lemmon, require irrigation in order to produce crops thereon; that the defendants and their grantors and predecessors in interest have paid all taxes, state, county and municipal, which have been assessed upon the lands and the water rights appurtenant thereto and described in their said cross-complaint; that the irrigation of the lands comprising said Williams ranch by the plaintiff and her grantors and predecessors in interest was not subsequent to the irrigation of the lands of the defendants by the grantors and predecessors in interest of the defendants, and any use made of the waters of Purdy Creek by the plaintiff, or her grantors or predecessors in interest, was and is not subject to the appropriation and use of the waters of said stream by the grantors or predecessors in interest of the defendants, or each or any of them, and is not inferior to the right of the defendants, or each or any of them, to divert or use the same upon their lands for irrigation, or for stock or domestic purposes; that as to the

defendants, John Doe, Jane Doe, Richard Roe and Sarah Roe, said action should be dismissed.

"As conclusions of law from the foregoing facts, the court finds: That the plaintiff is the owner of the right to the use of two-fifths of the waters of said Purdy creek, and of the right to divert the same from said stream at the head of the Williams ditch thereon, in the SE. $\frac{1}{4}$ of the SW. $\frac{1}{4}$ of Section 13, Township 21 North, Range 17 East, M. D. B. & M., and to convey the same to and upon said Williams Ranch through said Williams ditch and said two other ditches known as the Williams east ditch and the Williams west ditch, and that she is entitled to have said amount of said water flow down said stream to the head of said Williams ditch; that said defendant, Catherine L. Lemmon, is the owner of the right to the use of three-fifths of the waters of said Purdy Creek, and of the right to divert the same from said stream to and upon the lands owned by her and described in the cross-complaint of defendants filed herein on the 10th day of August, 1918; that the plaintiff is entitled to a judgment for damages against said defendant, Manuel Costa, in the sum of $1654.00; that the plaintiff is entitled to an injunction against said defendants and each and all of them, their agents, servants and employees, restraining and enjoining said defendants and each and all of them, their agents, servants and employees, from in any manner interfering with the right of the plaintiff to the use of two-fifths of the waters of said Purdy Creek, and from diverting from said creek more than three-fifths of the waters thereof, or from in any manner preventing two-fifths of the waters of said stream from flowing down said creek to the head of said Williams ditch; that plaintiff have and recover from said defendants her costs and disbursements herein."

Various objections to the judgment are made by appellants and many interesting questions relating to water rights are discussed in their briefs, but only a few of them require specific notice.

It is to be observed that in the complaint reliance is had upon appropriation and also the status of a riparian owner. These appeared in separate counts, but there was no finding that plaintiff was entitled to the use of the water by reason of the location of her land upon the natural watercourse,

but the judgment is based entirely upon appropriation by means of the Williams ditch. This excludes the idea that respondent had any other appropriation. This ditch was constructed in 1879; therefore the finding is equivalent to a determination that plaintiff's right had its origin in an appropriation made in 1879. It is true that the complaint alleged that an appropriation was made fifty-five years before the action was begun—that is, in 1861; but the trial court rejected this theory and fixed the time of the appropriation and localized it as before stated. However, the evidence is clear that prior to 1879 the government's title to appellant's lands had become vested in their predecessors in interest who were beneficially using practically all the water of Purdy Creek both as appropriators and riparian proprietors. This use began in 1862 and continued through subsequent years. Indeed, in 1875, Solomon Purdy, a predecessor in interest of appellants, posted and recorded a notice of appropriation of 200 inches of the waters of Purdy Creek, measured under a four-inch pressure, and publicly declared his uninterrupted possession and use of the waters for twelve years previously. This was followed by the construction of a ditch and flume, or measuring-box, having a capacity of 200 inches, and an actual diversion and use of the water for beneficial purposes. The regularity of said appropriation and said beneficial use are both undisputed, and hence we pursue this branch of the inquiry no further. It would necessarily follow that respondent by her appropriation in 1879 could gain no water right prior in time or superior in rank to the rights already vested in appellants. But the court's finding in effect is that respondent's said attempted appropriation must supersede and nullify the vested interest of appellants, there being no claim that anything like 200 inches will be left for them if respondent is awarded two-fifths of the flow.

In answer to this view respondent says: "If respondent had made her original appropriation of the waters of Purdy Creek through the so-called west ditch, which it is admitted was not constructed until 1879, there might be some merit in appellant's claim, but we have seen that Mrs. Williams and her husband, Enyart, made their original appropriation in 1861, and that respondent continued to use the waters of said stream, in the irrigation of the

Williams ranch, to the time of the commencement of this action, except when prevented by the appellants." It may be admitted that there is some *evidence* to support said claim of respondent, but we are dealing with the findings of the court, which are based upon the theory that respondent's right originated in 1879. If it may be claimed that some general language is used in said findings pointing to the position that respondent's title may be supported by some earlier proceeding, the answer is that it is too vague and indefinite to support the judgment and, besides, it is limited and controlled by the particular determination to which we have referred.

[1] Moreover, there could be no valid appropriation by respondent in 1879. The land embracing the place of diversion and for a considerable distance down the course of the ditch was not public land upon which one might enter to make an appropriation and diversion of the water, the title having passed from the government to appellants, as we have seen, in 1875. In section 221 of Wiel on Water Rights (third edition) it is said: "Despite any difference under the Colorado and California doctrines as to rights in water, both agree to-day that an appropriator must have lawful access to the stream before he can exercise water rights. . . . An appropriation cannot be initiated unlawfully by a trespass upon private land, and no rights can be obtained thereby against the land owners whose land is trespassed upon, in any jurisdiction"; and in section 222 it is declared: "The general principle was early established in California that the law of possessory rights (that is, the law of appropriation) applied only to vacant, unoccupied public domain, and must infringe nothing to which private rights had already attached at the time of the appropriation."

[2] Again, respondent is a lower riparian owner (at least as to a part of the water claimed), and as said by this court in *Pyramid Land & Stock Co.* v. *Scott*, 51 Cal. App. 634, [197 Pac. 398], "it is settled law in California that, while the right to take water from a stream, as against riparian owners, may be acquired by prescription (*Gallaher* v. *Montecito Valley Water Co.*, 101 Cal. 245, [35 Pac. 770]; *Bathgate* v. *Irvine*, 126 Cal. 144, [77 Am. St. Rep. 158, 58 Pac. 442]; *Arroyo D. & W. Co.* v. *Baldwin*, 155

Cal. 280, 285, [100 Pac. 874]), no such right may be acquired either by prescription or by appropriation by a lower as against an upper riparian owner in the same stream.''

From an examination of the whole record, we do not conclude that respondent is entitled to no use of any of the water that flows in said Purdy Creek, but we are satisfied that the particular findings and judgment herein cannot be upheld. It is admitted, indeed, by appellants that respondent has at least a co-ordinate right to four inches of water which has flowed to the Williams premises for household and domestic purposes and the watering of livestock, but it is claimed that her right to the use of the water for other purposes is subordinate to that of appellants.

[3] The determination of this question may properly be left to another trial, but we deem the suggestion not inappropriate that whatever rights plaintiff may have to the use of the water would seem to be measured and controlled by the law applicable to lower and upper riparian owners. Stated generally, the rule is that ''all the riparian owners are equally entitled to a reasonable use of the waters flowing along or through their lands.''

In Wiel's work, *supra,* in section 739, it is said: ''The water in the stream belongs to no one—it is not, and cannot be, while flowing in its natural course, the subject of ownership by anyone. But each riparian owner has a right to the use of his own *land,* and since all riparian proprietors, by their natural situation in contact with the stream, have an equal right of access to the water they have an equal right of use for their own lands, which no one of them may unreasonably violate. . . . The rights of the riparian proprietors are correlative as contrasted with the exclusive right obtained by appropriation.''

The subject, however, has been so often discussed by the courts of this state that further consideration herein would be futile.

It may be remarked, though, that considered as a practical question it must be manifest that the right of the lower riparian owner is somewhat subordinate to that of the upper, since the latter's use of the water may so diminish the flow of the stream as to prevent the former from receiving a supply commensurate with his wants.

But, as before suggested, the principles that govern riparian rights have been so thoroughly settled in this state that the parties to the action will be fully advised as to what facts they must present if a new trial is had upon this theory.

We think the judgment must be reversed, and it is so ordered.

Prewett, P. J., *pro tem.*, and Hart, J., concurred.